In the Matter of CENTRAL STATES PRESS, Debtor.

Thomas L. WILLIAMS, Trustee, Plaintiff,

v.

HOLDEN INDUSTRIES, INC., C.S.P., Inc., First Bank Minneapolis, and Inland Newspaper Machinery Corp., Defendants.

Bankruptcy No. 83–03145–SW.
Adv. No. 84–0520–SW.

United States Bankruptcy Court, W.D. Missouri, Southwestern Division.

June 26, 1985.

Thomas L. Williams, Roberts, Fleischaker & Scott, Joplin, Mo., for plaintiff.

Paul M. Hoffman, Kansas City, Mo., for Inland Newspaper Mach. Corp.

Edward E. Schmitt, Roy R. Drake, Foster C. Collins, Donald G. Scott, Dietrich, Davis, Dicus, Rowlands, Schmitt & Gorman, Kansas City, Mo., for Holden Industries, Inc., and C.S.P., Inc.

---

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT DENYING PLAINTIFF'S COMPLAINT AS TO REAL PROPERTY AND OTHERWISE DISMISSING IT WITHOUT PREJUDICE**

DENNIS J. STEWART, Bankruptcy Judge.

This is an action brought by the plaintiff trustee in bankruptcy to recover an alleged preferential transfer to some or all of the defendants within the meaning of § 547 of the Bankruptcy Code. The facts, established by trial and by the files and records in this action,[1] show that C.S.P., Inc., leased the property and equipment[2] which is sought to be recovered by the trustee from the City of Nevada, Missouri. The ownership interest of the City of Nevada is not challenged. This was done on August 1, 1972. On the same date, the parent corporation of C.S.P., Inc., Holden Industries, Inc., unconditionally guaranteed to the City of Nevada, Missouri, that C.S.P., Inc., would make full payment of all sums due under the lease agreement. Holden Industries, Inc., perfected a security interest in the lease at this time. The lease term was 15 years and 6 months. On July 1, 1976, C.S.P., Inc., in effect subleased the property and equipment to Wood River Printing and Publishing Company. Wood River, in turn, on June 11, 1979, assigned all rights and obligations under the lease of July 1, 1976, to the debtor corporation. The involuntary petition in these bankruptcy proceedings was then filed on November 28, 1983. An order for relief was entered by this court on February 7, 1984. In the meantime, the debtor corporation failed to make lease payments due on May 1, June 1, August 1, and September 1, 1983, in a cumulative total of $121,520.00. These de-

---

1. The plaintiff has moved for summary judgment and the court has otherwise, as noted in the text of this memorandum, offered the parties an opportunity for a plenary evidentiary hearing in this matter. On such a motion, the court may render judgment on the basis of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Rule 56(c), F.R.Civ.P.

2. The property which is the subject of this action is more particularly described and identified in conjunction with the second amended complaint of the plaintiff filed December 19, 1984. The summary description contained in the complaint is "substantially all of (debtor's) assets including real estate and personal property."

faults resulted in the issuance of a notice by C.S.P., Inc., demanding payment in accordance with the terms of the lease. Subsequently, on September 13, 1983, C.S.P., Inc., filed a petition for unlawful detainer in the Circuit Court of Vernon County, Missouri. The pendency of this action resulted in the transfer which is now challenged by the trustee, a voluntary surrender of the property in question by the debtor corporation on November 10, 1983, pursuant to a tripartite agreement among the debtor, C.S.P., Inc., and Holden Industries entered into on that date. In their pretrial brief the defendants C.S.P., Inc., and Holden Industries, Inc., assert as follows:

> "After said defaults by Central States, defendants paid the following amounts to the Fiscal Agent toward the Bond indebtedness under its Agreements with the City of Nevada, including said Guaranty Agreement:

| | | |
|---|---|---|
| August 1, 1983 | $ 36,075.00 | Bond Interest |
| February 1, 1984 | 200,000.00 | Bond Principal |
| February 1, 1984 | 36,075.00 | Bond Interest |
| August 1, 1984 | 29,825.00 | Bond Interest |
| Total | $301,975.00 | |

> "An additional $229,825.00 is due to be paid toward the Bond indebtedness on February 1, 1985. Defendants were required to borrow the money for said payments made after Central States' defaults, and has incurred related debt service expense. Defendants also have incurred substantial expense for repairs, maintenance, building security and insurance on the leasehold property, and attorneys fees in enforcing said Agreements."

The plaintiff trustee in bankruptcy contends that the value of the property returned to C.S.P., Inc., under the agreement of November 10, 1983, exceeded the total amount yet owed to C.S.P., Inc.; that the value was $1,500,000.00 while the amount owed was $1,376,174.00.

■ The trustee, in his initial complaints and amended complaints and in his motions and briefs has challenged the transfer solely on the grounds that it is voidable either as a preference under § 547 of the Bankruptcy Code or a fraudulent transfer under § 548 of the Bankruptcy Code. In turn, the defendants have responded only to those issues. The trustee appears to imply that the transfer achieved pursuant to the agreement of November 10, 1983, was a type of transfer which was required to be perfected by filing.[3] But he does not, as he might have, challenge the transfer as incomplete by reason of imperfection as of the date of bankruptcy, in which instance this court might grant him the opportunity to accept the lease upon cure of any default.[4] The trustee, rather, confines his attack to that which applies only to transfers made "before ... the date of the filing of the petition." See §§ 547(b)(4) and 548(a) of the Bankruptcy Code. Accordingly, for the purposes of those sections, "[i]f under the applicable state law, a transfer has not been perfected prior to the filing of the petition, section 547(e) provides that perfection shall be deemed to have taken place immediately before the date of the filing of the petition." 4 Collier on Bankruptcy ¶ 547.48, p. 547–151 (15th ed. 1983). According to the evidence and the briefs of the parties, then, the only disputed issue before the court is whether the transfer was of estate property or resulted in diminution of the estate. As to the real proper-

---

**3.** In such a situation, the trustee might have attacked the transfer of November 10, 1983, as one which was still in process postpetition—, i.e., as an unauthorized postpetition transfer under section 549 of the Bankruptcy Code or as an unperfected transfer under section 544 of the Bankruptcy Code. See note 4, *infra*.

**4.** See note 3, *supra*. The trustee appears to contend that prior transfers of the lease interest were required to be perfected by filing under the provisions of section 442.380 RSMo to the effect that "(e)very instrument in writing that conveys any real estate, or whereby any real estate may be affected, in law or equity, proved or acknowledged and certified in the manner herein prescribed, shall be recorded in the office of the recorder of the county in which such real estate is situated." If the prior transfers of the lease interest were required to be filed, it would seem that that of November 10, 1983, was also required to be filed. The files and records appear inconclusive on the issue of whether the papers constituting the transfer were filed in accordance with the foregoing statute.

ty involved, the facts before the court leave no material issue of fact for resolution. The trustee does not challenge the crucial facts that this property is owned by the City of Nevada and was the subject of a lease in which the defendant Holden Industries held a valid and perfected security interest. Further, he does not challenge basic facts which demonstrate that the value of the real property is less than the balance due against it. First, he has filed a motion for summary judgment, in response to which the defendants submitted affidavits demonstrating that the value of the real property is less than the balance due against it. No counteraffidavit was filed by the plaintiff.[5] And, on a motion for summary judgment, a party may not rest upon general unsworn contentions to make an issue of fact.[6] Even if the rule were otherwise, however, the contentions of plaintiff, interpreted in the light most favorable to him, do not raise any issue of fact. In his pretrial brief filed in this action on January 15, 1985, the trustee makes the following pertinent statement:

"On September 1, 1983, CSP terminated the lease (exhibit A) and with it the option to purchase, thereby reacquiring the right to exercise the option. On that date the outstanding balance due on the bonds was approximately 1.1 million dollars. The property so acquired by CSP was worth approximately 1.35 million dollars, the personal property having a value of at least .5 million and the real estate is presently listed for sale for 1.2 million. On the date of the termination, CSP was owed $121,520 in rent, $2,835.46 in interest thereon plus $3,670 in attorney's fees (exhibit A)."

When the amount admittedly due in rent, interest and attorney's fees is added to $1.1 million, it exceeds the $1.2 million which is said to be the value of the real estate. And finally, it must be observed that the court offered the trustee and the defendants the opportunity for a plenary evidentiary hear-

---

5. The affidavit submitted by the defendant Holden Industries, Inc., in support of its cross-motion for summary judgment is to the effect that "(t)he value of the real property covered by the Lease Agreement on September 1, 1983 (and on November 10, 1983), exclusive of the equipment, was $548,000 and if it were sold for that price, there would be a ten percent (10%) sales commission, leaving net proceeds of $493,200" and that "the subject property, including land, building, and equipment, had a total net value of $958,200" on both September 1, 1983, and November 10, 1983. The position of the trustee is that the security interest of C.S.P. Systems, Inc., is not perfected. He states as follows in his "reply brief to defendants' cross-motion for summary judgment" filed on February 22, 1985: "Defendants devote much effort to inject value as a disputed matter and suggest the trustee can only prevail if it is shown the value exceeds the indebtedness. While value is disputed, where a creditor obtains property in which it has no perfected security interest within 90 days of the filing of the petition, value is irrelevant." There is and can be no dispute, however, that Holden Industries, Inc., itself has a valid and perfected security interest in the lease agreement and that that interest could prevail over the trustee's potential "strong-arm" attack pursuant to section 544 of the Bankruptcy Code. Under such circumstances, value is virtually the only relevant question. The trustee goes on to impugn the security interest of Holden Industries, Inc., as being without consideration and as having been terminated. But the above cited facts to the effect that Holden guaranteed payment of the lease by C.S.P. Systems, Inc., establish, in the absence of counteraffidavits or other acceptable matter putting the issue in controversy, the fact of sufficient consideration and that any interest subsequently taken in the lease by the debtor was taken subject to the security interest of Holden Industries, Inc. And no authority is cited for the proposition that assignment of the lease terminated the security interest of Holden Industries, Inc. Even so, it is admitted that "the City of Nevada had a security interest in the equipment as of the filing of the bankruptcy," the date on which the trustee's rights against other creditors are determinable. Similarly, as to the real property, the trustee admits in his brief that the City of Nevada owns the underlying fee and the personal property of Central States Press. *It is not shown that there is any equity in its value which the debtor could claim over and against the admittedly valid and perfected claims of the City of Nevada.*

6. "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Rule 56(e), F.R.Civ.P.

ing, on sufficient advance and adequate notice, on January 15, 1985, at which the trustee declined to offer evidence on this issue as well as the other joined issues. This court must therefore conclude that there could have been no equity in the real property as of the date of bankruptcy which could be recovered as a preference or fraudulent transfer. Even the most liberal rules permitting recovery under § 547 or § 548 apply only to the extent that the value of the collateral transferred exceeds the indebtedness of the debtor on the security interest.[6a]

■ With respect to the personal property, which the trustee contends to have a value of $.5 million, it is clear that adjudication of this issue will involve the rights of the City of Nevada, the admitted owner of the real property. For it is the trustee's contention in this regard is that there is no perfected security interest as to the personal property when, as he contends, the personal property cannot be regarded as fixtures covered by the ownership interest of the City of Nevada and Holden Industries' security interest. Thus, to adjudicate this issue seems necessarily to involve the rights of the City of Nevada and to make that entity a party needed for a just adjudication within the meaning of Rule 19, F.R. Civ.P., and Rule 7019 of the Rules of Bankruptcy Procedure.[7] This is so even though, in connection with his motion for summary judgment, the trustee contends that the City has released its security interest in proceeds of the sale of the personal property. For this court could lawfully determine the authenticity, validity and effectiveness of this consent only in an action in which the City of Nevada is named and joined as a party. Accordingly, the trustee's claim for recovery of all or part of the chattels or their proceeds will be dismissed without prejudice to his instituting a timely [8] action in which the City of Nevada is properly joined as a party.[9]

The trustee has additionally claimed $5,000 under § 542(b) as an amount due on a contract fully performed by the debtor for which defendants Holden Industries and C.S.P., Inc., had agreed to pay $5,000. Evidence has not been offered on this contract claim nor has it been briefed. Further, the answer of the defendants joins factual issues in this regard,[10] and thus

---

**6a.** See, e.g., *Durrett v. Washington Nat. Ins. Co.,* 621 F.2d 201, 203 (5th Cir.1980) ("The sale ... deprived the bankruptcy estate of an equity in the property of $84,600.00, if computed on the $200,000.00 market value fixed by the district court."); *In re Hulm,* 738 F.2d 323, 327 (8th Cir.1984) ("The bankruptcy court did not hold an evidentiary hearing in order to develop a record from which a determination could be made whether the price bid at the foreclosure sale provided a reasonably equivalent value for Hulm's interest in the property."); *Matter of Fountain,* 32 B.R. 965, 967, 968 (Bkrtcy.W.D.Mo. 1983) ("(T)he facts imbedded in the documents submitted by the court demonstrate the existence, at the time of foreclosure, of an equity in the property which was the subject of the foreclosure. Under such circumstances, the governing authority under the current Bankruptcy Code holds that the foreclosure can be set aside as a preference."); 4 Collier on Bankruptcy para. 547.12, p. 547–43 (1983) (If a security interest "allows the secured party to take judgment in a foreclosure action for an amount in excess of the principal amount of the mortgage, plus interest and costs, the excess amount recovered by the judgment will result in a preference.")

**7.** "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if ... in his absence complete relief cannot be accorded among those already parties, or ... he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may ... as a practical matter impair or impede his ability to protect that interest." Rule 19(a), F.R.Civ.P.

**8.** It appears that it is still a matter of months before the applicable statute of limitations runs out.

**9.** In none of the pleadings which are on file in this action does it appear that the City of Nevada has been joined as a party; nor does it appear that that entity has ever been served with summons or other process.

**10.** The answer of the defendant Holden Industries, Inc., raises the issue of whether the work has been completed and also raises other defenses. Under the "turnover" theory, section 542(b) of the Bankruptcy Code authorizes bankruptcy court action only when the contract right

takes it without the compass of bankruptcy court jurisdiction under the rule of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Accordingly, these claims must be dismissed. Other claims have been expressly dropped.[11]

Accordingly, for the foregoing reasons, it is hereby,

ORDERED, ADJUDGED AND DECREED that the plaintiff's claim for recovery of all or part of the real property or its value or any lease interest therein be, and it is hereby, denied. It is further

ORDERED, ADJUDGED AND DECREED that the plaintiff's other claims be, and they are hereby, dismissed without prejudice.

is matured and free of any issue of fact in that regard. *Matter of Kakolewski,* 29 B.R. 572, 577 (Bkrtcy.W.D.Mo.1983).

11. The claims against Inland Printing Machinery Corporation and First Bank of Minneapolis were dismissed voluntarily by the trustee on January 25, 1985.